<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**</u>

|  |  |
|---|---|
| TD BANK, N.A., : | |
| Plaintiff, : | Civil Action No. 08-3100 (JAG) |
| v. : | **OPINION** |
| ST. LAWRENCE FOOD CORP.; : LEWIS COUNTY DAIRY CORP.; AHAVA FOOD CORP.; AHAVA OF CALIFORNIA, LLC; and YONI REALTY, LLC, : Defendants. : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion (Docket Entry No. 10), filed by TD Bank, N.A. ("TD Bank" or "Plaintiff"), seeking default judgment, pursuant to FED. R. CIV. P. 55(b), against St. Lawrence Food Corp. ("St. Lawrence"), Lewis County Dairy Corp. ("Lewis Dairy"), Ahava Food Corp. ("Ahava"), Ahava of California, LLC ("Ahava CA"), and Yoni Realty, LLC ("Yoni") (collectively, "Defendants"). For the following reasons, TD Bank's motion is denied.

**I. <u>FACTS</u>**

TD Bank, successor-by-acquisition of Interchange Capital Co. ("ICC"), brought suit on June 23, 2008 against St. Lawrence, Lewis Dairy, Ahava, Ahava CA, and Yoni for breach and

1

default of several lease agreements and/or guaranty agreements entered into by one or more of Defendants with ICC. (Compl. ¶ 10.) At issue in this lawsuit are six sets of lease and guaranty agreements.[1] There are five lease agreements, dated between December of 2004 and February of 2006, by which St. Lawrence leased food processing equipment (id. at ¶¶ 12–61 (counts one, three, five, seven, and nine)), as well as five guaranties of payment, corresponding to each lease agreement, by which Lewis Dairy, Ahava, Ahava CA, and Yoni each guaranteed the obligations of St. Lawrence (id. at ¶¶ 18–66 (counts two, four, six, eight, and ten)). The sixth set of agreements includes a lease agreement, dated October 18, 2005, by which Lewis Dairy leased food processing equipment (id. at ¶¶ 67–72), and one guaranty of payment by which St. Lawrence, Ahava, Ahava CA, and Yoni guaranteed the obligations of Lewis Dairy in the lease agreement (id. at ¶¶ 73–77). The sum total of the outstanding balances on the aforementioned leases and/or guaranties is $464,671.99.[2] (Id. at ¶¶ 12–77.)

---

[1] The leases are as follows:

| Lease Agreement | Date of Lease | Outstanding Sum | Due as of | Leasor |
|---|---|---|---|---|
| AHADAI-14 | Dec. 3, 2004 | $215,410.18 | Apr. 16, 2007 | St. Lawrence |
| AHADAI-16 | Jan. 16, 2005 | $38,747.16 | Apr. 20, 2007 | St. Lawrence |
| AHADAI-17 | Nov. 2, 2005 | $50,539.62 | Feb. 2, 2007 | St. Lawrence |
| AHADAI-18 | Oct. 28, 2005 | $32,131.42 | Apr. 2, 2007 | St. Lawrence |
| AHADAI-20 | Feb. 8, 2006 | $101,072.79 | Apr. 14, 2007 | St. Lawrence |
| AHADAI-19 | Oct. 18, 2005 | $26,770.82 | May 2, 2007 | Lewis Dairy |

[2] The sum of the amounts due on the leases is $464,671.99. However, TD Bank's motion for default judgment claims the amount of $558,983.76, the basis of which is unexplained. (Pl. TD Bank, N.A.'s Application Pursuant to Fed. R. Civ. P. 55(a) and 55(b)(1) for Entry of Default, and for J. of Default, Against the Defs. St. Lawrence Food Corp.; Ahava of California, LLC; and Yoni Realty, LLC, for the Amount of $558,983.76, Jointly and Severally as

After Defendants were served through their principal, Moises Banayan, on September 17, 2008 (Docket Entry No. 8), the parties have interacted on numerous occasions. David Antonucci, counsel for Defendants, called TD Bank's counsel, Joseph M. Cerra, and reached an agreement on a 30-day extension for filing an answer to the complaint. (Cert. of Joseph M. Cerra, Esq. in Support of Mot. for Default [hereinafter "Cerra Cert. Mot. for Default"] ¶¶ 3, 5.) Antonucci also inquired about the possibility of settling. (Id. at ¶ 4.) On November 10, 2008, Antonucci proposed a resolution to the case. (Id. at ¶ 6.) Cerra responded favorably a few days later and asked Antonucci to secure his clients' approval. (Id.) Having heard no response, Cerra wrote a letter to Antonucci on December 2, 2008, requesting that Defendants either respond to the proposal or file an answer by December 5. (Id. at ¶ 7.) Cerra also warned that TD Bank would seek default against Defendants if they failed to respond by this deadline. (Id.) Antonucci called on or about December 5, asking for additional time to close a settlement, stating that Defendants were going to arrange for the sale of the TD Bank collateral to a third party, rather than paying a settlement amount. (Id. at ¶ 8.)

After some further communication, the parties reached an understanding, and, on January 21, 2009, Cerra sent to Antonucci an Assignment Agreement. (Id. at ¶ 9.) Once again having heard no response, Cerra sent two follow-up emails, first on February 2, 2009, then on February 6, inquiring about the status and again warning that TD Bank would seek default against Defendants, if this matter was not resolved. (Id. at ¶¶ 10–12.) On March 30, 2009, Antonucci contacted Cerra, reporting that a company was prepared to close on the sale but that it needed TD Bank's wire instructions. (Id. at ¶ 13.) Cerra sent the wire instructions and Antonucci responded the next

---

to Each Def. [hereinafter "Mot. for Default"].)

day: "Waiting for it to hit my account now.  Please have the documents signed and held in escrow."  (Id.)  However, on April 6, 2009, the controller of the purchasing company contacted Cerra, explaining that he had the Bill of Sale but also wanted the schedule of equipment leases and other materials.  (Id. at ¶ 14.)  Cerra said he would forward the additional information when he received the wire transfer to his attorney trust account, to be held in escrow.  (Id.)  Cerra then sent a follow-up email on April 15, 2009, at which point the controller of the purchasing company responded that he would send the money to Antonucci's attorney trust account.  (Id. at ¶ 15.)  That day, Cerra agreed and asked Antonucci to confirm the receipt of the funds, indicating that, upon confirmation, he would send the requested information to the controller. (Id.)

Finally, Cerra indicated on June 4, 2009, when he had not received any confirmation by Antonucci, that TD Bank would move for default judgment, stating, "we've been waiting forever to get this deal done."[3]  (Id. at ¶ 16.)  At TD Bank's request for entry of default, the Clerk entered default on June 8, 2009.

## IV.  JURISDICTION

Before a district court can enter default judgment against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

**A.**     **Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C.

---

[3] As of the filing of TD Bank's motion, on June 5, 2009, Antonucci had not confirmed receipt of the funds.  (Cerra Cert. Mot. for Default ¶ 16.)

§ 1332, because TD Bank and Defendants are citizens of different states and the amount in controversy, exclusive of costs and interest, exceeds $75,000.  Specifically, Plaintiff is a banking association with a principal place of business in Wilmington, Delaware.  Defendants St. Lawrence, Lewis Dairy, and Ahava are corporations organized under the laws of, and with principal places of business in, the State of New York.  (Compl. ¶¶ 2–4.)  Defendant Yoni is a limited liability company organized under the laws of, and with a principal place of business in, the State of New York.  (Id. at ¶ 6.)  Defendant Ahava CA is a limited liability company organized under the laws of, and with a principal place of business in, the State of California.  (Id. at ¶ 5.)  No individual member of Yoni or Ahava CA reside in Delaware.  (Id. at ¶¶ 5–6.)  Furthermore, all of the defendants are controlled and owned, in whole or substantial part, by Moise Banayan, who resides in the State of New York.  (Id. at ¶ 7.)  TD Bank claims a total of $464,671.99 in damages, which exceeds the jurisdictional threshold.

**B.**     **Personal Jurisdiction**

A federal court sitting in diversity must conduct a two-step analysis to determine whether a court has personal jurisdiction over the defendant.  First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant.  Second, the court must determine whether the exercise of jurisdiction violates the Due Process of the Fourteenth Amendment.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

In this forum, the inquiry collapses into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  As such, federal law defines the parameters of this Court's in personam jurisdiction.  IMO Indus., 155 F.3d at 259.

Personal jurisdiction, however, is a right that can be waived by a party. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A forum selection clause in a contract is one way to effectuate this waiver. Nat'l Equip. Rental Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

The Supreme Court of the United States held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms and give effect to the legitimate expectations of the parties. Id. at 12.

Expanding on this ruling, the Third Circuit has adopted the following three step test:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that the enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983) (citing M/S Bremen, 407 U.S. at 12–13).

This Court has jurisdiction over Defendants by virtue of the forum selection clauses in the lease and guaranty agreements at issue here. Each of the agreements contained a forum selection clause by which the signing party consented to jurisdiction in any court in New Jersey. The parties have not presented, nor does this Court find, any facts that overcome the presumptive validity of the forum selection clauses, and, therefore, this Court has personal jurisdiction over Defendants.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of default judgment by a district court. The Rule states:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:
>     (A) conduct an accounting;
>     (B) determine the amount of damages;
>     (C) establish the truth of any allegation by evidence; or
>     (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2).

It is "well settled" that the entry of default judgment is within the discretion of a district court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). A party is not entitled to default judgment as a matter of right, even if a defendant is technically in default. See, e.g., Virgin Records Am., Inc. v. Bagan, No. 08-4694, 2009 WL 2170153 *2 (D.N.J. July 21, 2009). Indeed, the Third Circuit "'does not favor entry of defaults or default judgments,' as it prefers adjudications on the merits." Hill v. Williamsport Police Dept., 69 F. App'x 49, 51 (3d Cir. 2003) (quoting United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984)); see also Hritz, 732 F.2d at 1181 ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.").

In exercising the court's discretion, however, there are three factors that "control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied; (2) whether

the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing $55,518.05 in U.S. Currency, 728 F.2d at 195); see also Hritz, 732 F.2d at 1181 ("[T]he $55,518.05 in U.S. Currency factors inform both the district court's initial determination regarding a default judgment as well as appellate review of that decision.").[4]

### III. ANALYSIS

Applying the three factor test from Chamberlain, this Court finds that TD Bank is not entitled to default judgment. The first factor, prejudice to the plaintiff, weighs against granting default judgment. A party may be prejudiced when its ability to pursue its claim is hindered, for instance, by loss of evidence, increased potential for fraud or collusion, or substantial reliance on the judgment. See Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982); accord Hill, 69 F. App'x at 52.

---

[4] The merits of this approach have been called into question by the Third Circuit. See Hill, 69 F. App'x at 51–52 & n.3 (3d Cir. 2003). Acknowledging Judge Rendell's reasoning in her concurrence, the majority in Hill noted that "Chamberlain, perhaps counterintuitively, applies this three-part test to the motion seeking a default judgment whereas the case on which Chamberlain relies — $55,518.05 in U.S. Currency — sets out the test in the context of a motion to overturn a default judgment. Whatever the merits of transposing the $55,518.05 in U.S. Currency test to Chamberlain's facts . . . we follow Chamberlain pending *en banc* review and reversal." Id. at 51–52. See also id. at 53 (Rendell, J., concurring) ("I am concerned that in Chamberlain we may have unwittingly imposed an unrealistic and misplaced burden on plaintiffs, and unduly constrained the discretion of district courts. For instance, it makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses when the defendant has failed to respond. . . . [A]s footnote three of our opinion indicates, there is persuasive authority for the proposition that these decisions should be left wholly within the sound discretion of the district courts, taking into consideration a broad set of factors. . . . I see little reason to constrain [district courts'] discretion . . . [to] three specific factors only.").

TD Bank has not indicated any prejudice that would result if default judgment were denied. In fact, when TD Bank's counsel declared that TD Bank would file for default judgment, he stated, "we've been waiting forever to get this deal done." Nowhere in the complaint, in this present motion, nor in the numerous settlement communications recited in counsel's certification, has TD Bank expressed any other explanation or rationale for seeking default judgment. See Feliciano, 691 F.2d at 656–57 (finding no prejudice in spite of plaintiff's financial costs because "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment"); cf. Carpenters Pension & Annuity Plan of Philadelphia and Vicinity v. Grosso, No. 07-5013, 2009 WL 2431340 *3 (E.D. Pa. Aug. 6, 2009) (finding prejudice because defendant "will likely evade judgment completely" without default judgment).

The second factor, whether Defendants have a litigable defense, is inconclusive in light of the fact that Defendants have not yet filed an answer nor a response to this motion. See, e.g., Hill, 69 F. App'x. at 52 ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense; the second factor was hence inconclusive.").

The third factor, Defendants' culpability in delay, weighs distinctly against the entry of default judgment. The standard for culpable conduct is generally the "willfulness" or "bad faith" of a non-responding defendant, including "[r]eckless disregard for repeated communications from plaintiffs and the court." Hritz, 732 F.2d at 1182–83. In other words, the "[a]ppropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." Id. at 1183.

9

In this case, Defendants were first to propose a settlement, to which TD Bank responded positively. Then, TD Bank did not receive any further information until after it sent an inquiry letter a month later, at which point Defendants responded with an alternate proposal: to sell the TD Bank collateral to a third party. After the parties reached an understanding about this sale, TD Bank sent a final agreement, and then, having heard no response from Defendants, also sent two follow-up emails. About two months later, Defendants responded with information that the sale was ready to close. The controller of the purchasing company subsequently contacted TD Bank directly, confirming the Bill of Sale and requesting additional information. Finally, as of June 4, 2009, Defendants have not confirmed, at TD Bank's request, the close of the sale.

This Court does not see Defendants' behavior as rising to the standard of culpable conduct. There is no evidence that Defendants are willfully evading their responsibility or that they have conducted these negotiations in bad faith. Defendants' communications with TD Bank are numerous, albeit perhaps also terse and of irregular frequency. It also might be inferred, from TD Bank's positive response, that Defendants made a reasonable and good faith settlement proposal. Furthermore, TD Bank's communication with the controller of the purchasing company, in which the controller confirmed the receipt of the Bill of Sale, lends credence to the idea that Defendants have made some good faith effort, more recently, in arranging and closing the agreed-upon sale. See, e.g., Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 124 (3d Cir. 1983) (finding the delay caused by defendant's counsel's difficulty in communicating with co-counsel was not willful); cf. Carpenters Pension, 2009 WL 2431340 *3–4 (finding culpability where defendant had been evading plaintiff's pursuit of claim for three years, submitted to a deposition only after threat of being held in contempt, refused to testify about relevant work

history, and hoped to "evade judgment permanently").

In light of the weight of the two factors against default judgment and the general preference to resolve matters on the merits where practicable, this Court finds TD Bank is not entitled to a default judgment at this time.

## IV. CONCLUSION

For the above mentioned reasons, this Court shall deny Plaintiff's motion for default judgment.

      S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: November 2, 2009